THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**CHRISTOPHER BUCHANAN**                                                    **PLAINTIFF**
**ADC #176655**

**v.**                              **Case No. 3:24-cv-00074-KGB-PSH**

**MICHAEL ROBERTS,** *et al.*                                              **DEFENDANTS**

## ORDER

Before the Court are the Proposed Findings and Partial Recommendation ("Recommendation") submitted by United States Magistrate Judge Patricia S. Harris (Dkt. No. 175). Plaintiff Christopher Buchanan filed objections to the Recommendation (Dkt. No. 176). After reviewing the Recommendation, Buchanan's objections, and after a *de novo* review of the record, the Court adopts the Recommendation (Dkt. No. 175).

### I.      Background

Buchanan, an Arkansas Division of Correction ("ADC") inmate, filed this lawsuit on April 26, 2024 (Dkt. No. 2). At the Court's direction, Buchanan later filed an amended complaint and addendum (Dkt. Nos. 14–15). Buchanan was subsequently granted leave to file a second amended complaint (the "operative complaint") (Dkt. Nos. 71; 72). Buchanan sued Wellpath and several of its current or former employees (the "Wellpath Defendants") as well as several ADC employees including Medical Director Aundrea Culclager, Captain Clinton Baker, Major John Haynes, Warden Thomas Hurst, Classification Officer Megan Pigford, Deputy Warden Claudia Harris, Sergeant Jeremy Haverstick, Coach Scott Bata, Corporal Michael Roberts, and Deputy Director William Straughn (the "ADC Defendants"). In the operative complaint, Buchanan alleges that he was attacked by another inmate on October 13, 2023, while he was on yard call; that there were too many inmates and not enough staff on yard call at that time; that he was kept on a "back

hallway"[1] despite threats that he had received there; that he was moved back and forth from medical to isolation where he did not receive appropriate medical treatment; that others failed to provide adequate medical care for the injuries he sustained during the October 13, 2023, attack; and that he was retaliated against by certain ADC Defendants for filing grievances (Dkt. No. 72).

The ADC Defendants filed an amended motion to dismiss Buchanan's operative complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 158). Buchanan responded to the ADC Defendants' amended motion to dismiss (Dkt. No. 162). Judge Harris held a hearing on the amended motion to dismiss on December 18, 2025, and at the end of the hearing took the motion under advisement (Dkt. No. 174).

In her Recommendation, Judge Harris recommends that the amended motion to dismiss be granted, in part, and denied, in part (Dkt. No. 175, at 2). Judge Harris recommends that the Court grant the ADC Defendants' motion to dismiss Buchanan's claims in their official capacities and that the Court grant the ADC Defendants' motion to dismiss Buchanan's claims based on his placement in the back hallway, including his failure-to-protect, conspiracy, and outrage claims. Judge Harris recommends that the Court deny the ADC Defendants' motion to dismiss the remainder of Buchanan's claims.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

---

[1] During the hearing held by Judge Harris, Buchanan clarified that the "back hallway" refers to housing unit 1 in 7 barracks of the Grimes Unit, which is towards the back of the barracks. Throughout this Order when the Court discusses the back hallway, it is referring to unit 1 in 7 barracks of the Grimes Unit.

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Finally, in evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, the court holds "a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (alteration in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.   Analysis

The Court writes separately to address Buchanan's objections (Dkt. No. 176). In the Recommendation, Judge Harris finds that Buchanan fails to state a plausible claim for relief

against the ADC Defendants in their official capacities and as to his individual capacity claims based on his placement in the back hallway, including his failure-to-protect, conspiracy, and tort of outrage claims (Dkt. No. 175, at 15).

In his objections, Buchanan argues that he should be able to bring both his back hallway claims and his "official capacity" claims, which he views as several of the ADC Defendants violating the First and Eighth Amendment and violating "policy" by retaliating against him for filing grievances by placing him in the back hallway (Dkt. No. 176). The Court will address Buchanan's objections

### A.    Tort Of Outrage Claim

Buchanan discusses Judge Harris's tort of outrage analysis at both the beginning and the end of his objections (Dkt. No. 176, at 1–3, 6–8). The Court has consolidated Buchanan's objections to one discussion of Buchanan's tort of outrage claim.

"To prove outrage, a plaintiff must show that '(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," and was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it.'" *Berry v. Oswalt*, 143 F.3d 1127, 1130 (8th Cir. 1998) (quoting *Deitsch v. Tillery,* 833 S.W.2d 760, 762 (Ark. 1992) (citation omitted)).

In the operative complaint, the actions that Buchanan describes to support his tort of outrage claim related to the back hallway are that, in February 2024, after the incident on October 13, 2023, in which he was beaten while in the yard, ADC Defendants moved him back to the back

4

hallway (Dkt. No. 72, at 12).  Buchanan asserts that after being moved to the back hallway he was "physically threatened by multiple inmates." (*Id*.).  According to the operative complaint, Buchanan informed multiple staff members that he had been threatened, and Buchanan also filed "multiple grievances," including an emergency grievance (*Id*).  Buchanan informed Judge Harris at the hearing that, after he filed the emergency grievance, ADC staff removed him from the back hallway, and ADC Defendants placed the inmates who threatened him on his inmate separation list (Dkt. No. 2-1, at 63–64).  Buchanan also confirmed during the argument before Judge Harris that he was never attacked in his housing area.

Buchanan's operative complaint does not describe an attack in the back hallway (Dkt. No. 72, at 12–13).  Buchanan clarified at the hearing before Judge Harris that he the only attack he refers to in the operative complaint is the attack on October 13, 2023, in the yard (*Id*., at 13).  This attack occurred *before* Buchanan received threats in the back hallway in February 2024.  Buchanan does not describe who threatened him on the back hallway or why he believes this housing unit was particularly dangerous for him.  In the operative complaint and his objections to the Recommendation, Buchanan generally refers to threats that he received from inmates in the back hallway in 2024, but Buchanan also stated at the hearing that when he reported the threats of other inmates to staff, the inmates were removed from the back hallway and placed on his separation list (*see also* Dkt. No. 2-1, at 63–64).

As Judge Harris notes, Buchanan's general fear for his safety is not sufficient to allege deliberate indifference on the part of the ADC Defendants or to require that the ADC Defendants place Buchanan in protective custody (Dkt. No. 175, n.6).  *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994).  Further, Buchanan's general fear for his safety is insufficient to allege the tort of outrage over the ADC Defendants' actions related to the back hallway.

Buchanan's operative complaint and objections fail to describe actions taken by the ADC Defendants that could plausibly be considered "extreme and outrageous" or "outside the bounds of human decency" to state a tort of outrage claim. *Croom v. Younts*, 913 S.W.2d 283, 287 (Ark. 1996) (determining that Arkansas courts take a strict approach and give a narrow view to the tort of outrage). Buchanan confirmed at the hearing that he was not ever attacked in the housing area, either before or after his attack in the yard on October 13, 2023. When Buchanan filed an emergency grievance reporting being threatened in the back hallway, ADC Defendants immediately moved Buchanan (Dkt. No. 2-1, at 63–64). Buchanan does not describe actions by the ADC Defendants that caused him emotional distress that was so severe that no reasonable person could be expected to endure it. *See, e.g., Holloman v. Keadle*, 931 S.W.2d 413, 414–15 (Ark. 1996) (determining that employee whose employer called her offensive names, yelled and cursed at her, and threatened to kill her if she quit or caused trouble during approximately two years of employment, but did not make employer aware that she was "not a person of ordinary temperament" who was susceptible to emotional distress, had not stated sufficient facts as a matter of law to establish tort of outrage claim); *Renfro v. Adkins*, 914 S.W.2d 306, 312 (Ark. 1996) (internal citations omitted) ("[T]he tort of outrage requires clear-cut proof. Merely describing the conduct as outrageous does not make it so.").

Judge Harris also finds in her Recommendation that Buchanan has not made plausible allegations that the ADC Defendants acted maliciously, which is necessary to overcome statutory immunity afforded under Arkansas law (Dkt. No. 175, at 12 (citing Ark. Code Ann. § 19-10-305(a) (recodified effective August 5, 2025, at Ark. Code Ann. § 25-33-305))). Referencing what formerly was referred to as Arkansas Code Annotated § 19-10-305(a) and is now codified at Arkansas Code Annotated § 25-33-305, the Arkansas Supreme Court has stated that officers and

employees acting without malice and within the course and scope of their employment are immune from an award of damages in litigation. *See Baldridge v. Cordes*, 85 S.W.3d 511, 514 (Ark. 2002). The Court finds no plausible allegation from Buchanan in the operative complaint to support a claim that the ADC Defendants acted maliciously in placing Buchanan in the back hallway to overcome the statutory immunity offered to the ADC Defendants under Arkansas Code Annotated § 19-10-305(a).

In his objections, Buchanan argues that certain ADC Defendants acted maliciously by placing him in the back hallway in retaliation for using the grievance procedure (Dkt. No. 176, at 7–8). There is no evidence that inmates on Buchanan's separation list were housed on the back hallway when Buchanan was placed there. Further, Buchanan acknowledges that after he received threats and filed grievances, including an emergency grievance, he was immediately moved from the back hallway and that the inmates who threatened Buchanan were placed on his separation list. The facts asserted by Buchanan do not state a plausible claim that ADC Defendants acted with malice in placing Buchanan in the back hallway to overcome the defense of statutory immunity available under Arkansas law.[2]

For these reasons, the Court adopts Judge Harris's Recommendation and grants the ADC Defendants' motion to dismiss Buchanan's tort of outrage claim.

---

[2] As Judge Harris explains in her Recommendation, Buchanan "adequately alleged that a number of staff (identified in paragraph 47 of the [operative complaint]) retaliated against him for filing grievances by placing him in harm's way in the back hallway." (Dkt. No. 175, at 13). Judge Harris recommends that Buchanan be allowed to proceed with his retaliation claim separate and apart from his tort of outrage claim (Dkt. No. 175, at 13–14). No party has objected to this portion of Judge Harris's Recommendation. Accordingly, the Court will adopt this portion of Judge Harris's Recommendation without objection.

B.    **Civil Rights Conspiracy Claim**

Judge Harris recommends that the Court grant the ADC defendants' motion to dismiss Buchanan's civil rights conspiracy claim related to the back hallway. "To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show:  that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (citations omitted).

As discussed above, Buchanan has not asserted facts to state a plausible constitutional claim related to the back hallway.  Buchanan alleges that multiple defendants were aware of threats that he received in the back hallway both before and after October 13, 2023 (Dkt. No. 72, ¶¶ 8–10, 14–15, 40, 44, 56–63).  However, these allegations are insufficient to establish a plausible claim of deliberate indifference because Buchanan acknowledges that he was never attacked in the back hallway.  Furthermore, when Buchanan reported to ADC Defendants that he had been threatened in the back hallway, ADC Defendants removed him from the back hallway and placed inmates who had threatened him on his separation list.  Because Buchanan has not stated a plausible claim that he has been deprived of a constitutional right related to the back hallway, his civil rights conspiracy claim fails.  The Court adopts Judge Harris's recommendation to dismiss Buchanan's civil rights conspiracy claim related to the back hallway.

C.    **Official Capacity Claims**

Judge Harris recommends that the Court grant the ADC Defendants' motion to dismiss Buchanan's official capacity claims against the ADC Defendants because a suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and official capacity claims for money damages are barred by the doctrine of sovereign immunity (Dkt. No. 175, at 5,

8

15 (citing *Will v. Michigan Dept. of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431–432 (8th Cir. 1989)).  Judge Harris acknowledges that Buchanan also seeks injunctive relief including an order directing Warden Thomas Hurst, Deputy Warden Claudia Harris, Deputy Director William Straughn, and Classification Officer Megan Pigford to cease their threats against him; an order changing the retaliation policies at the Grimes Unit, and an order preventing the Grimes Unit from adding any additional beds (Dkt. No. 72, at 19).  However, the Court agrees with Judge Harris that these claims are moot because Buchanan is no longer incarcerated at the Grimes Unit and is no longer subject to allegedly unlawful policies and practices at the Grimes Unit (Dkt. No. 175, at 5–6).

In his objections, Buchanan again states that ADC Defendants violated ADC policy and custom as well as his First and Eighth Amendment rights by retaliating against him for using the grievance procedure by placing him in the back hallway (Dkt. No. 176, at 5).  The Court will permit Buchanan to pursue his retaliation claims for monetary damages against the ADC Defendants in their individual capacities, but Buchanan's retaliation claims for monetary damages against the ADC Defendants in their official capacities are barred by the doctrine of sovereign immunity.  *See Will v. Michigan Dept. of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431–432 (8th Cir. 1989).  To the extent that Buchanan seeks injunctive relief by way of an order changing the retaliation policies at the Grimes Unit, that claim is moot because Buchanan has been transferred from the Grimes Unit.  The Court overrules Buchanan's objections related to his official capacity claims because the objections break no new ground.

**IV.    Conclusion**

Upon a *de novo* review of the record, including the Recommendation, the Court finds that Buchanan's objections break no new ground and fail to rebut the Recommendation.  Thus, the Court agrees with the Recommendation and adopts it as its findings in its entirety (Dkt. No. 175).

Therefore, it is ordered that:

1.    The ADC Defendants' amended motion to dismiss is granted, in part, and denied, in part (Dkt. No. 158).

2.    The Court grants the motion to dismiss and dismisses without prejudice Buchanan's individual capacity failure-to-protect, tort of outrage, and civil rights conspiracy claims against the ADC Defendants based on Buchanan's placement in the back hallway.

3.    The Court grants the motion to dismiss and dismisses without prejudice Buchanan's official capacity claims against the ADC Defendants.

4.    The Court denies the motion to dismiss Buchanan's failure-to-protect claim against the ADC Defendants related to his October 13, 2023, attack; Buchanan may proceed with this claim.

5.    The Court denies the motion to dismiss Buchanan's corrective inaction claim against Culclager; Buchanan may proceed with this claim.

6.    Buchanan may also proceed with his claim that ADC Defendants Hurst, Harris, Teague, Haynes, Straughn, Culclager, Pigford, and Wellpath LLC retaliated against him for filing grievances by placing him in harm's way in the back hallway.

So ordered, this 2nd day of March, 2026.

Kristine G. Baker
Chief United States District Judge